LILJEBERG, J.
Appellant, Jeff Bratton, in his capacity as the court-appointed independent administrator for the estate of decedent, Tavis Domingue, seeks review of the trial court's February 14, 2017 judgment, which granted an exception of no cause of action filed by appellee, Peggy T. Gereighty, and dismissed appellant's claims against her with prejudice. He also seeks review of the trial court's denial of his exception of res judicata and contends the trial court should not have ruled on Ms. Gereighty's exception of res judicata because she did not file an objection to the domestic commissioner's ruling.
For reasons set forth more fully below, we affirm the trial court's judgment which denied appellant's exception of res judicata. We further affirm the portion of the trial court's judgment which granted the exception of no cause of action and dismissed reimbursement claims for expenses Mr. Domingue allegedly paid during the marriage. However, we reverse the trial court's decision to grant Ms. Gereighty's exception of no cause of action and dismiss Mr. Domingue's claim to recover an estimated $40,000 he withdrew from his retirement plan and provided to Ms. Gereighty prior to their marriage. We also vacate the trial court's ruling with respect to Ms. Gereighty's exception of res judicata and reinstate the domestic commissioner's ruling on this exception.
Finally, we find Ms. Gereighty's exceptions of lack of procedural capacity and no right of action first filed with this Court, as well as her motion to dismiss the appeal, are moot due to the substitution of the court-appointed independent administrator in these appellate proceedings for decedent, Tavis Domingue.
FACTUAL AND PROCEDURAL BACKGROUND
This matter originated as a petition for divorce, custody and child support filed by appellee, Peggy T. Gereighty, on October 3, 2014. Ms. Gereighty alleged the parties married on October 12, 2002, and have a daughter born on August 17, 2010. On April 16, 2015, Mr. Domingue filed an answer and reconventional demand in response to the petition.
In the reconventional demand, Mr. Domingue sought reimbursement for $40,000 *1021 he allegedly provided to Ms. Gereighty for a down payment to purchase an interest in her separate property residence and other payments he allegedly made on her behalf with respect to this separate property. He alleged that on October 2, 2002, the parties entered into a Prenuptial Marriage Contract for a Separate Property Regime ("Prenuptial Contract"). Prior to their marriage, Ms. Gereighty owned a home located at 3301 Clifford Drive in Metairie, Louisiana. ("Clifford Property") with her brother.[1] Mr. Domingue alleged that he provided $40,000 out of his separate funds to Ms. Gereighty for a down payment for her to buy her brother's half interest in the Clifford Property. Mr. Domingue alleged that he provided Ms. Gereighty the down payment because he believed they would have a lasting marriage. He alleged he was entitled to a reimbursement because he only resided in the home for four and a half years during their marriage.[2] He also sought reimbursements for payments he made for the mortgage, taxes, property insurance and repairs to the Clifford Property.
On April 29, 2015, Ms. Gereighty filed several exceptions in response to the reconventional demand, including an exception of no cause of action alleging the Clifford Property was her separate property purchased with her separate funds. She further alleged that pursuant to the terms of the Prenuptial Contract, the parties were not under a community property regime and any funds Mr. Domingue provided to her or paid on her behalf were gifts and not subject to reimbursement.
On June 15, 2015, the domestic commissioner granted Ms. Gereighty's exception of no cause of action and denied Mr. Domingue's request to amend his reconventional demand to reallege his reimbursement claims. Mr. Domingue filed a timely objection, and following a pre-trial conference, the trial court agreed to allow Mr. Domingue thirty days to amend the allegations in his reconventional demand.
On July 22, 2015, Mr. Domingue filed his First Amended Reconventional Demand, which completely replaced all allegations in the original demand. He raised the same factual allegations regarding the $40,000 he provided to Ms. Gereighty for the down payment on the Clifford Property. He further alleged that the funds he provided to her were not a gift and alleged he was entitled to reimbursement of the $40,000 he paid to her from his separate funds, as well as mortgage payments he made to satisfy Ms. Gereighty's separate debt, pursuant to the doctrine of unjust enrichment set forth in La. C.C. art. 2298. Alternatively, he argued he was entitled to relief pursuant to the community property partition provisions set forth in La. R.S. 9:2801. He additionally sought reimbursement for half of the increased value of the Clifford Property during their marriage pursuant to La. C.C. art. 2368, and alleged an alternative claim based on Ms. Gereighty's alleged bad faith and fraud "regarding the $40,000 separate property funds, the purchase of her brother's portion of [the Clifford Property], and the mismanagement of the community property portion of [the Clifford Property]" pursuant to La. C.C. art. 2354.
Ms. Gereighty did not file an answer or exceptions in response to the First Amended Reconventional Demand. Mr. Domingue then engaged in discovery by issuing subpoenas duces tecum to Ms. Gereighty's bank and mortgage company. Following this discovery, Mr. Domingue *1022 filed a Second Amended Reconventional Demand, which again completely replaced all allegations set forth in the First Amended Reconventional Demand. In his Second Amended Reconventional Demand, Mr. Domingue alleged the same causes of action outlined above. However, he provided different and more detailed facts regarding the "estimated $40,000" he provided to Ms. Gereighty. He alleged for the first time that he provided the funds for the down payment "with the understanding that he would own a portion of the house and that the purpose of the down payment was to reduce their monthly mortgage note." He again reiterated that the funds were not a gift to Ms. Gereighty.
He also explained for the first time that he provided the funds for the down payment prior to signing the Prenuptial Contract on October 2, 2002 and prior to their October 12, 2002 marriage. Mr. Domingue alleged that he requested the funds for the down payment for the Clifford Property on July 10, 2002. On July 31, 2002, $39,451.46 was withdrawn from his retirement account and he received a check in the amount of $31,561.17, after deducting federal taxes. On August 14, 2002, he deposited these funds in a joint bank account with Ms. Gereighty. On August 26, 2002, $29,500.00 was withdrawn and deposited into Ms. Gereighty's separate bank account. Mr. Domingue alleged that Ms. Gereighty did not use these funds for the down payment to purchase the Clifford Property, but rather immediately withdrew the funds to pay her separate debts.[3]
Mr. Domingue alleged that on November 15, 2002, after the parties married, Ms. Gereighty purchased her brother's interest in the Clifford Property for $133,500 in her name only. She also entered into a mortgage on that same day borrowing $160,000.00 against the Clifford Property. Mr. Domingue alleged Ms. Gereighty told him his name could not be on the act of sale "due to his credit." Mr. Domingue claimed he relied on these representations, but contended they were false.
Mr. Domingue again alleged he was entitled to reimbursement of the funds he provided for the down payment, as well as payments he made towards the mortgage and health insurance premiums, under the theory of unjust enrichment as set forth in La. C.C. art. 2298, as well as La. C.C. art. 2373, which governs the sharing of expenses in a community property regime. Mr. Domingue also alleged community property claims in the alternative, pursuant to La. R.S. 9:2801, and realleged a claim for half of the increased value of the Clifford Property during their marriage pursuant to La. C.C. art. 2368. He also restated his previous claim for fraud and bad faith management of community property pursuant to La. C.C. art. 2354.
In response, on August 31, 2016, Ms. Gereighty filed, inter alia , an exception of no cause of action seeking dismissal of the First and Second Amended Reconventional Demands. She again argued the parties were not under a community property regime and that pursuant to the terms of the Prenuptial Contract, acknowledged by Mr. Domingue, any funds Mr. Domingue gave to her were not subject to reimbursement.
*1023 She further alleged that Mr. Domingue did not have a cause of action for unjust enrichment because all funds provided to Ms. Gereighty were gifts or donations justified by the existence of their marriage. She further argued that another remedy at law was available-that is to seek revocation of the donations.
Ms. Gereighty and Mr. Domingue also both filed exceptions of res judicata. Ms. Gereighty argued the trial court's prior rulings prohibited Mr. Domingue from continuing his efforts to pursue a reimbursement claim. Mr. Domingue argued, on the other hand, that the parties' prior agreement and the trial court rulings estopped Ms. Gereighty from filing an exception of no cause of action seeking dismissal of his amended claims.
On January 19, 2017, the domestic commissioner signed a judgment, which granted Ms. Gereighty's exception of no cause of action and denied her exception of res judicata as moot. The judgment also denied Mr. Domingue's exception of res judicata. Mr. Domingue filed a timely objection for review by the trial court. On February 14, 2017, the trial court overruled Mr. Domingue's objection and entered a judgment granting Ms. Gereighty's exception of no cause of action and dismissing the claims set forth in Mr. Domingue's First and Second Reconventional Demands, with prejudice.[4] The trial court further ruled that the exceptions of res judicata filed by both parties were denied.
On February 20, 2017, Mr. Domingue filed a motion and order for appeal, and request to designate the record. The trial court granted the order of appeal on February 24, 2017.
On April 12, 2017, the trial court issued written reasons for its judgment granting Ms. Gereighty's exception of no cause of action. The trial court reasoned Mr. Domingue failed to allege a cause of action pursuant to La. R.S. 9:2801, and La. C.C. arts. 2354 and 2368, because these provisions provide remedies to parties subject to a community property regime and Mr. Domingue did not dispute that the parties agreed to remain separate in property by entering into the Prenuptial Contract. The trial court further opined that the Prenuptial Contract eliminated any claims they had against each other's separate property:[5]
The First and Second Amended Reconventional Demands of Tavis Domingue assert various claims pursuant to Louisiana Revised Statute 9:2801, Louisiana Civil Code Article 2368, and Louisiana Civil Code Article 2354. Each of these remedies arise out of a community property regime, yet the parties herein entered into a Prenuptial Marriage Contract whereby they contracted to remain separate in property. Contracts have the effect of law between the parties, and must be performed in *1024 good faith. Thus, the Prenuptial Marriage Contract governs this litigation.
As agreed to contractually, there is no community property owned by the parties herein. Therefore, the First and Second Amended Reconventional Demand fails to state a cause of action for claims arising under Louisiana Revised Statute 9:2801, Louisiana Civil Code Article 2368, and Louisiana Civil Code Article 2354. Further, the Prenuptial Marriage Contract unequivocally states that neither party shall have a claim of any type to the property owned by the other party. As such, these claims are dismissed.
The trial court further reasoned that Mr. Domingue could not state a claim for unjust enrichment for the $40,000 he provided to Ms. Gereighty because he had another remedy at law for revocation of donation:
Tavis C. Domingue further asserts a claim for unjust enrichment for $40,000.00 provided to Peggy Gereighty 'in contemplation of the marriage' and 'out of the belief they would have a lasting marriage.' A claim for unjust enrichment arises when one is enriched without cause at the expense of another. Nonetheless, an unjust enrichment claim is subsidiary and is not available if the law provides another remedy. Taking the allegations of the First and Second Amended Reconventional Demand as true, the Court finds that the $40,000.00 at issue was a donation by Tavis Domingue to Peggy Gereighty. Thus, Tavis Domingue has another remedy at law for revocation of said donation, and his First and Second Amended Reconventional Demands fail to state a cause of action for unjust enrichment.
On July 13, 2017, Ms. Gereighty filed exceptions of lack of procedural capacity and no right of action with this Court, arguing the appeal should be dismissed because Mr. Domingue died sometime after April 18, 2017, and a succession representative had not been appointed to represent his interests with respect to this appeal. On August 24, 2017, Stacy and Ryland Domingue filed an appellant brief as the "administrators" for the succession of Mr. Domingue. On October 13, 2017, Ms. Gereighty filed her appellate brief and raised issues regarding the administrators' authority to represent decedent. The parties later agreed these individuals did not have the proper authority to represent Mr. Domingue's estate.
On October 31, 2017, this Court issued an order informing the parties that it could not proceed with any of the issues relating to the appeal until a motion to appoint a proper legal successor for Mr. Domingue was filed with this Court, as required by La. C.C.P. arts. 801, 821 and Uniform Rule-Courts of Appeal, Rule 2-9. On February 15, 2018, Ms. Gereighty again moved to dismiss the appeal due to the failure to file a motion to substitute a party to represent Mr. Domingue.
On March 14, 2018, the succession court appointed Jeff Bratton ("appellant") as an independent administrator to represent Mr. Domingue's succession. On April 2, 2018, Mr. Bratton filed a motion with this Court to be substituted as the legal successor for Mr. Domingue and this Court permitted Mr. Bratton to adopt the appellant brief and other pleadings previously filed on behalf of decedent.
LAW AND DISCUSSION
First Assignment of Error-Failure to File Written Opposition
In the first assignment of error, appellant argues the trial court erred by failing to find Mr. Domingue's objections to the domestic commissioner's January 19, 2017 Judgment were unopposed by Ms. *1025 Gereighty. Appellant reasons that, because Ms. Gereighty did not file a written opposition to his objection, the trial court should have considered it unopposed and further denied Ms. Gereighty the opportunity to present oral argument during the hearing.
Appellant argues the local rules applying to the Twenty-Fourth Judicial District Court required Ms. Gereighty to file an opposition eight days prior to the hearing. Appellant points to Twenty-Fourth Judicial District Court Appendix Rule 24(C), which provides that "[t]he delays for filing of pleadings, briefs or memoranda and response thereto prior to hearing shall, except where specifically addressed in these rules, conform to the Uniform District Court Rules 9.8, 9.9, 9.10." He further cites to Uniform District Court Rule 9.9(c), which requires a party to file an opposition to an exception or motion eight days prior to the scheduled hearing.
These rules are inapplicable to the present matter because, as emphasized above, they specifically govern "exceptions and motions," not an objection to a hearing officer recommendation filed in family court proceedings. While Twenty-Fourth Judicial District Court Appendix Rule 35.5(C) requires the objecting party to file a supporting memorandum within five days after filing the objection, no rule requires the opposing party to file a memorandum in opposition to the objection.
Even if the rules required Ms. Gereighty to file an opposition, Twenty-Fourth Judicial District Court Appendix Rule 24(E) provides the district court with broad discretion as to whether to impose sanctions when a party fails to conform with pleading rules. For these reasons, we find the trial court did not abuse its discretion by finding Ms. Gereighty opposed Mr. Domingue's objection and permitting her to engage in oral argument at the hearing on the objection.
Second Assignment of Error-Failure to Consider First and Second Amended Reconventional Demands
In his second assignment of error, appellant contends the trial court's reasons for judgment indicate it based its decision on language that is not contained in the First and Second Amended Reconventional Demands, but rather contained in the original reconventional demand. Specifically, appellant contends that in its reasons for judgment, the trial court cited to Mr. Domingue's allegations that he transferred $40,000 to Ms. Gereighty "in contemplation of the marriage" and "out of the belief they would have a lasting marriage." Appellant appears to argue these allegations only appeared in his original reconventional demand, thereby indicating the trial court did not consider his allegations in the subsequent amended reconventional demands when determining whether he adequately stated a cause of action.
First, in its reasons for judgment, the trial court states it reviewed Mr. Domingue's claims alleged in the First and Second Amended Reconventional Demands. Furthermore, the phrase "in contemplation of marriage" does not appear in the original reconventional demand and is contained in paragraphs 7 and 10 of the Second Amended Reconventional Demand. Finally, while the phrase "out of belief they would have a lasting marriage" appears in the original reconvention demand, it also appears in the First Amended Reconventional Demand.
For reasons discussed above and more fully below, we find the allegations in the Second Amended Reconventional Demand completely replaced the allegations in the original and First Amended Reconventional Demands, and therefore, the trial court's analysis should have been based solely on the allegations contained in the second demand. However, we do not agree *1026 with appellant's argument in this assignment of error that the trial court based its ruling on the allegations contained in the original reconventional demand. Therefore, we find this assignment of error is without merit.
Third Assignment of Error-Reimbursement Claims
The third assignment of error addresses the substance of appellant's claims that he stated a cause of action to recover reimbursements from Ms. Gereighty. He contends the trial court failed to address these reimbursement claims in its reasons for judgment. Appellant's arguments relating to the merits of his reimbursement claims are scattered throughout the appellate brief and difficult to follow. However, it appears that appellant contends the trial court erred by granting the exception of no cause of action because the Prenuptial Contract does not preclude his reimbursement claims for mortgage payments and health insurance premiums Mr. Domingue paid-alleged separate debts and obligations owed by Ms. Gereighty during the marriage.[6] He argues in the alternative that he is entitled to reimbursement for these payments pursuant to the theory of unjust enrichment. He also argues the trial court erred by finding he failed to state a cause of action for unjust enrichment to recover the estimated $40,000 he provided to Ms. Gereighty for the down payment on the Clifford Property prior to the marriage.
The function of an exception of no cause of action is to test the legal sufficiency of a petition by determining whether the law affords a remedy on the facts alleged in the pleadings. City of New Orleans v. Board of Dirs. of La. State Museum , 98-1170 (La. 3/2/99), 739 So.2d 748, 755. The burden of showing the plaintiff cannot state a cause of action is on the mover. Id. ; Woods v. St. Charles Parish Sch. Bd. , 00-1350 (La. App. 5 Cir. 1/23/01), 783 So.2d 387, 391. Well-pleaded facts are taken as true, and every reasonable interpretation must be accorded the language of the petition in favor of maintaining its sufficiency and affording the litigant the opportunity to present his evidence. Id. ; Dixie Federal Sav. and Loan Ass'n v. Pitre , 498 So.2d 112, 114 (La. App. 5th Cir. 1986).
Generally, no evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. La. C.C.P. art. 931. The court reviews the petition, as well as any attachments, and accepts well-pleaded allegations of fact as true, and the issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Korson v. Independence Mall I, Ltd. , 593 So.2d 981, 983-84 (La. App. 5th Cir. 1992). However, the jurisprudence recognizes an exception to this general rule where the parties enlarge the pleadings by admitting evidence without objection at the hearing on the exception of no cause of action. See City of New Orleans, 739 So.2d at 756 ; Emigh v. W. Calcasieu Cameron Hosp. , 13-2985 (La. 7/1/14), 145 So.3d 369, 372 ; Wallace C. Drennan, Inc. v. St. Charles Parish , 14-89 (La. App. 5 Cir. 8/28/14), 164 So.3d 186, 189 ; Woods , 783 So.2d at 391.
In Emigh , supra , the Louisiana Supreme Court recently reiterated this exception to the prohibition on evidence when determining whether a petition states a cause of action:
*1027 To determine whether any valid cause of action exists, we must examine the factual allegations contained in the petition. We note that typically evidence is not allowed to be admitted to support or controvert an exception of no cause of action. See La. Code Civ. P. art. 931. However, the parties, without objection, admitted the contracts at issue, thereby expanding what the court may examine in determining whether a legal remedy exists. (See City of New Orleans v. Bd. of Directors of Louisiana State Museum, 98-1170 (La. 3/2/99), 739 So.2d 748, 756, wherein the court recognized the jurisprudential exception to the rule that allows evidence admitted without an objection to enlarge the pleadings.)
Id. at 372.
The sufficiency of a petition subject to an exception of no cause of action is a question of law, and a de novo standard is applied to the review of legal questions; this Court renders a judgment based on the record without deference to the legal conclusions of the lower courts. Foti v. Holliday , 09-93 (La. 10/30/09), 27 So.3d 813, 817. If the allegations of the petition state a cause of action as to any part of the demand, the exception must be overruled. Pitre v. Opelousas General Hosp ., 530 So.2d 1151, 1162 (La. 1988).
The trial court indicated in its reasons for judgment that it considered the substance of the Prenuptial Contract in determining whether appellant stated a cause of action in his First and Second Amended Reconventional Demands. At the hearing on the exception of no cause of action, the trial court admitted the Prenuptial Contract into evidence after Ms. Gereighty moved to introduce the exhibit into evidence and Mr. Domingue indicated he had no objection to the motion. Therefore, we find the trial court properly considered the Prenuptial Contract as part of the expanded pleadings in determining whether Mr. Domingue alleged a cause of action against Ms. Gereighty.
Reimbursement for Expenses Incurred During the Marriage
We first consider appellant's argument that he is entitled to reimbursement for payments Mr. Domingue made towards Ms. Gereighty's expenses, including separate mortgage obligations, as well as health insurance premiums he paid for Ms. Gereighty during the marriage. He first claims that reimbursement for these payments is not precluded by the terms of the Prenuptial Contract and the trial court failed to address these reimbursement claims in its reasons for judgment. On the other hand, Ms. Gereighty argues the clear and unambiguous language of the prenuptial contract precludes these reimbursement claims.
Spouses may enter into a matrimonial agreement before or during marriage as to all matters that are not prohibited by public policy. La. C.C. art. 2329. A regime of separation of property is established by a matrimonial agreement that excludes the legal regime of community acquets and gains. La. C.C. art. 2370. Under the regime of separation of property, each spouse acting alone uses, enjoys, and disposes of his property without the consent or concurrence of the other spouse. La. C.C. art. 2371.
Most importantly with respect to the expense issues raised on appeal before this Court, La. C.C. art. 2373 provides as follows:
Each spouse contributes to the expenses of the marriage as provided in the matrimonial agreement. In the absence of such a provision, each spouse contributes in proportion to his means.
*1028 A prenuptial agreement is a contract between the parties. Contracts have the effect of law between the parties, and parties are obliged to perform contractual obligations in good faith. La. C.C. art. 1983. When parties are bound by a valid contract and material facts are not in conflict, the contract's application to the case is a matter of law. Barber v. Barber, 09-780 (La. App. 1 Cir. 5/7/10), 38 So.3d 1046, 1049. Where the words of a contract are clear, unambiguous, and lead to no absurd consequences, the meaning and intent of the parties must be sought within the four comers of the instrument and cannot be explained or contradicted by parole evidence. Ventura v. McCune , 14-95 (La. App. 5 Cir. 10/15/2014), 184 So.3d 46, writ denied , 14-2576 (La. 2/27/15), 160 So.3d 985. The words of a contract must be given their generally prevailing meaning. La. C.C. art. 2047. La. C. C. art. 2056 further provides that "[i]n case of doubt that cannot otherwise be resolved, a provision in a contract must be interpreted against the party who furnished its text."
Appellate review that is not founded upon any factual findings made at the trial court level, but is based upon an independent review and analysis of the contract within the four corners of the document, is not subject to the manifest error rule of law. Barber , 38 So.3d at 1049. In such cases, appellate review is simply whether the trial court was legally correct. Id.
We first note that appellant does not seek to nullify the Prenuptial Contract, other than one provision relating to the sharing of expenses discussed more fully below. Mr. Domingue acknowledged in the Second Amended Reconventional Demand that he was "subject to a separate property regime established in a prenuptial agreement ...." Rather, appellant claims Mr. Domingue did not waive his reimbursement claims in the Prenuptial Contract. Appellant further argues that the Prenuptial Contract should be construed against Ms. Gereighty as she is an attorney and drafted the Prenuptial Contract. He alleges she presented the contract to Mr. Domingue several weeks prior to their wedding and told him if they divorced, they would each "get out of it what they had put into it." Mr. Domingue alleged in the Second Amended Reconventional Demand that he understood this to mean he would be entitled to receive reimbursements. He further alleged that the parties agreed to split expenses during their marriage.
The relevant provisions of the Prenuptial Contract signed on October 2, 2002, provided for a separate property regime as follows:
• The parties shall be and remain separate in property. The legal regime of the community of acquet and gains, as provided by Louisiana law ...shall not exist between the parties under any circumstances whatsoever.
***
• The parties agree that all of his or her property and income of whatever nature, from whatever source, and however acquired, whether owned or acquired before the marriage or owned or acquired during the marriage, is and shall remain his or her separate property.
***
• The parties acknowledge that each of them, individually, is the owner of separate property. The parties acknowledge that each party desires that the separate property of each party remain the separate property....
***
*1029 • Peggy T. Gereighty reserves unto herself all of the fruits, revenues, income and appreciation of all her separate property ... and including any enhancement to the separate property, for her own separate use and benefit, and for her sole administration and control. Moreover, all salaries, reimbursable expenses, pension, IRA's mutual funds, SEP(s), profit sharing benefits and all other benefits resulting from Peggy T. Gereighty's labor before and during the marriage shall be and remain her separate property.
• Tavis C. Domingue reserves unto himself all of the fruits, revenues, income and appreciation of all his separate property ... and including any enhancement to the separate property, for his own separate use and benefit, and for his sole administration and control. Moreover, all salaries, reimbursable expenses, pension, IRA's mutual funds, SEP(s), profit sharing benefits and all other benefits resulting from Tavis C. Domingue's labor before and during the marriage shall be and remain his separate property.
The parties also agreed they would not acquire a claim or any interest in the separate property of the other party, even if the separate property increased in value due to contribution or efforts of the other party:
The parties acknowledge that now, and after the date of the marriage between the parties, each party shall separately retain all rights in his or her own property. ... Neither party now has, nor shall ever have, a claim to, or acquire any interest in, any of the separate property of the other for any reason including, without limitation, the reason that said separate property is acquired, earned, or accumulated by any party hereto during the marriage or increased in value, by any means or for whatever reason whatsoever, during their marriage, even through [sic] said separate property or all or part of its [sic] increases in value during the marriage was in any way attributable to the contribution or effort of the other or would otherwise be considered marital property or community property in the absence of this Prenuptial Marriage Contract.
The Prenuptial Contract also provided that a transfer of income and property from one spouse became the separate property of the other spouse, and neither spouse would be personally liable for the debts of the other spouse.
The parties acknowledge that nothing in this Prenuptial Marriage Contract shall bar or be construed to limit or restrict the right of either party to make or receive a voluntary transfer, conveyance, bequest or devise from the other, during their joint lifetimes, by will, the laws of intestacy, or otherwise. Property or income so transferred shall become the separate [sic] of the done, devisee or legatee.
***
The parties acknowledge that neither party shall be personally liable for the debts contracted by the other party, regardless of whether the debt was contracted before or during the marriage.
The parties also recognized that they entered into the Prenuptial Contract freely and voluntarily after obtaining independent legal advice:
The parties knowingly and voluntarily acknowledge that they are entering into this Prenuptial Marriage Contract freely and voluntarily, and not as a result of any fraud, duress, or undue influence imposed upon him or her by the other party or by any other person or person, *1030 or any promises not contained herein; that they have ascertained and weighed all of the facts and circumstances; that each has consulted with an attorney of his or her own free choice, independently of each other, with whom each is fully satisfied; ... that all of the provisions of this Prenuptial Marriage Contract have been fully explained to them; that they clearly understand and agree to all of the provisions herein and they desire that this agreement be enforced as written; and that each of the parties believes that the terms of this Prenuptial Marriage Contract are fair and reasonable, and in their individual best interest.
Most importantly, with respect to allocating expenses as permitted by La. C.C. art. 2373, the Prenuptial Contract provides:
Tavis C. Domingue shall be responsible for all of the everyday and usual expenses of the marriage and Peggy T. Gereighty shall be responsible for all luxuries of the marriage.
Finally, the parties agreed not to seek any relief inconsistent with the Prenuptial Contract in the event of divorce:
The parties agree that, in the event that any marital actions for separation or to terminate the marriage by divorce, ... the parties individually agree that they shall be bound by all of the terms and conditions of this Prenuptial Marriage Contract, that they shall not therein seek any relief inconsistent with or in addition to any of the terms and conditions of this Prenuptial Marriage Contract ....
Though appellant argues the trial court failed to address the issue of reimbursement of the mortgage payments and health insurance premiums in its reasons for judgment, we note the trial court explained in its reasons that it dismissed these claims because "the Prenuptial Marriage Contract unequivocally states that neither party shall have a claim of any type to the property owned by the other party."
In his assignment of error, appellant contends the trial court erred because it "failed to consider provisions of the separate property contract that preserved Tavis Domingue [sic] claims; failed to consider any inconsistent provisions in favor of Tavis Domingue because his ex-wife and fiancé at the time, attorney Peggy Gereighty was the drafter of the contract. The trial [sic] failed to consider that medical insurance expenses and claims not addressed in the contract are governed by the Civil Code." Appellant further argues that Mr. Domingue did not renounce his reimbursement rights in the Prenuptial Contract and he never intended to renounce these rights.
He contends his "separate property reimbursement rights" are preserved in the language cited above which states "all salaries, reimbursable expenses, pension, IRA's mutual funds, SEP(s), profit sharing benefits and all other benefits resulting from Tavis C. Domingue's labor before and during the marriage shall be and remain his separate property." He also asserts these claims are preserved by provisions recognizing that each party retains all rights in his or her separate property and neither shall acquire an interest in the others separate property for any reason. He contends the mortgage payments and insurance premiums were Ms. Gereighty's separate obligations and he should be reimbursed for expenses that were not his responsibility during the marriage.
He also argues the provision in the Prenuptial Contract placing the responsibility for "everyday and usual expense of the marriage" on Mr. Domingue is null and void. He contends that Ms. Gereighty had a duty to provide support to Mr. Domingue *1031 pursuant to La. C.C. art. 98, and she could not waive that duty by agreeing to only pay for the luxuries of the marriage.
On the other hand, Ms. Gereighty argues the clear and unambiguous terms of the Prenuptial Contract preclude relief because Mr. Domingue agreed to be responsible for the everyday and usual expenses of the marriage. She contends this provision is not null or against public policy because La. C.C. art. 2373 allows individuals who adopt a separate property regime discretion to agree on how to allocate expenses of the marriage in their matrimonial agreement. She contends the parties clearly intended to be separate in property without any right to reimbursement from the other for the increase in value to the other spouse's property. She further notes the language in the Prenuptial Contract wherein the parties agreed that any donation or gift from one spouse became the separate property of the other spouse.
We first address appellant's argument that the provision governing expenses in the Prenuptial Contract is null and void as against public policy. Appellant's only support for this argument is his general allegation that this provision violated Ms. Gereighty's duty to provide support and assistance during the marriage in accordance with La. C.C. art. 98. Appellant fails to address the clear and concise language of La. C.C. art. 2373, which permits spouses in a separate property regime to agree on how to allocate expenses during the marriage. This provision contains no prohibition against allocating all expenses to one spouse. Placing the responsibility to pay all expenses on one spouse is not necessarily a violation of the other spouse's duty to provide support. Certainly, in many marriages where only one spouse is able to earn income for the family, the other non-earning spouse is not automatically violating a duty to provide support pursuant to La. C.C. art. 98. Furthermore, Mr. Domingue did not allege in the Second Amended Reconventional Demand that he was unable to pay the disputed expenses or that he paid them unwillingly. Based on the foregoing, we do not find that the provision in the Prenuptial Contract requiring Mr. Domingue to pay the everyday and usual expenses of the marriage is null and void as it does not violate public policy in Louisiana.
We also reject appellant's argument that his reimbursement claims are preserved by the terms of the Prenuptial Contract because he did not expressly waive these claims in the agreement. Pursuant to the clear and unambiguous language of the Prenuptial Contract, Mr. Domingue agreed to pay the everyday and usual expenses of the marriage. In Krielow v. Krielow , 93-2539 (La. 4/11/94), 635 So.2d 180, 187, the Louisiana Supreme Court recognized that "[h]ouse payments, taxes, and insurance premiums are ordinary and customary expenses of the marriage." See also Bourgeois v. Bourgeois , 09-986 (La. App. 5 Cir. 3/23/10), 40 So.3d 150, 154. We find no doubt or ambiguity with respect to this provision requiring this Court to construe the provision against Ms. Gereighty or to look beyond the four corners of the Prenuptial Contract.
Furthermore, the provisions which preserve each parties' rights to their separate property do not create rights of reimbursement for expenses Mr. Domingue agreed to pay during their marriage. The Prenuptial Contract allowed the parties to make and receive voluntary transfers of property and income between one another and provided that these transfers became the separate property of the receiving party. They also agreed they would not assert a claim for any increase in value in the other spouse's separate property resulting *1032 from his or her contributions or efforts. Finally, the parties agreed that in the event of divorce, they would not seek relief inconsistent with the terms of the Prenuptial Contract.
Appellant also argues that he can recover these reimbursement pursuant to the theory of unjust enrichment. As discussed more fully below, appellant cannot use an unjust enrichment claim to recover reimbursements for expenses he agreed to pay in the Prenuptial Contract. See Jim Walter Homes, Inc. v. Jessen , 98-1685 (La. App. 3 Cir. 3/31/99), 732 So.2d 699, 706.
Therefore, we find pursuant to the agreement reached between Ms. Gereighty and Mr. Domingue, appellant cannot seek reimbursement for expenses Mr. Domingue expressly agreed to pay.
Reimbursement for Estimated $40,000 Provided Prior to Signing Prenuptial Contract
Appellant also contends that trial court erred by finding Mr. Domingue failed to state a cause of action for unjust enrichment to recover the estimated $40,000 Mr. Domingue allegedly withdrew from his retirement account and provided to Ms. Gereighty prior to their marriage. He argues these funds are not governed by the terms of the Prenuptial Contract because Mr. Domingue provided them to Ms. Gereighty prior to signing that agreement. Appellant alleges that contrary to the trial court's finding, this payment was not a donation and therefore, Mr. Domingue did not have another remedy at law, other than unjust enrichment, to recover these funds. He also argues for the first time on appeal, without any further explanation, that the $40,000 payment could be considered a loan.[7]
When conducting a de novo review of a trial court's decision to grant an exception of no cause of action, an appellate court is charged with determining whether the facts alleged support any cause of action. National Gypsum Co. v. Ace Wholesale, Inc. , 98-1196 (La. App. 5 Cir. 6/1/99), 738 So.2d 128, 130. The burden of demonstrating that the petition states no cause of action is upon the mover. City of New Orleans v. Board of Com'rs of Orleans Levee Dist ., 93-690 (La. 7/5/94), 640 So.2d 237, 253.
It is well-established that Louisiana is a fact pleading state. La. C.C.P. art. 862 ; Reynolds v. Brown , 11-525 (La. App. 5 Cir. 12/28/11), 84 So.3d 655, 658-59. The theory of the case doctrine, under which a party must select a theory of his case or defense and adhere to it throughout the litigation, was abolished. Solis v. NPK, LLC , 10-465 (La. App. 5 Cir. 3/29/11), 63 So.3d 236, 238, writ denied , 11-1094 (La. 9/16/11), 69 So.3d 1145 ; First S. Prod. Credit Assoc. v. Georgia-Pacific , 585 So.2d 545, 548 (La. 1991). The party must set forth facts supporting the cause of action, but is not required to assert all theories of recovery. Solis , 63 So.3d at 238. Courts should construe pleadings so as to achieve substantial justice and in order to reach the truth, should avoid the application of harsh, technical rules of pleading. Id.
As long as the facts constituting a claim are alleged, the party may be granted any relief to which he is entitled under the pleadings and the evidence.
*1033 Trust for Schwegmann v. Schwegmann Family Trust , 05-95 (La. App. 5 Cir. 5/31/05), 905 So.2d 1143, 1147. While it is not necessary for a plaintiff to plead the theory of his case in the petition, mere conclusions unsupported by facts do not set forth a cause of action. Foret v. Caruso , 15-682 (La. App. 5 Cir. 3/16/16), 194 So.3d 643, 646.
Regardless of the theories tested by the trial court in granting the exception of no cause of action, the appellate court may determine a cause of action exists under a different theory from its review of the alleged facts of the petition. Hailey v. Hickingbottom , 30,728 (La. App. 2 Cir. 6/24/98), 715 So.2d 647, 649. A petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. Fink v. Bryant , 01-987 (La. 11/28/01), 801 So.2d 346, 349 ; Jenkins v. Jackson , 16-482 (La. App. 5 Cir. 2/22/17), 216 So.3d 1082, 1089, writ denied , 17-652 (La. 9/6/17), 224 So.3d 984. Every reasonable interpretation must be accorded the language of the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial. Jackson v. State ex rel. Dept. of Corrections , 00-2882 (La. 5/15/01), 785 So.2d 803, 806.
Under Louisiana law, the requisite elements of a claim for unjust enrichment are: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) no other available remedy at law. Pique Severn Ave., P'ship. v. Ballen , 00-1030 c/w 00-1031 (La. App. 5 Cir. 10/31/00), 773 So.2d 179. La. C.C. art. 2298 provides the unjust enrichment remedy "is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule." See also Walters v. MedSouth Record Management, LLC , 10-353 (La. 6/4/10), 38 So.3d 243. Furthermore, if the terms of a contract precludes a plaintiff from seeking a certain remedy, he may not raise an alternative claim for unjust enrichment to avoid the prohibitions of the contract. See Jim Walter Homes, 732 So.2d at 706.
In its reasons for judgment, the trial court stated that in the First and Second Amended Reconventional Demands, Mr. Domingue alleged he provided the disputed funds to Ms. Gereighty "in contemplation of marriage" and "out of the belief they would have a lasting marriage." The trial court considered these allegations as evidence of Mr. Domingue's intent to donate the funds to Ms. Gereighty and determined Mr. Domingue failed to state a cause of action for unjust enrichment because another remedy at law was available-revocation of the donation.
First, as noted above, we found the Second Amended Reconventional Demand completely replaced the allegations of the First Amended Reconventional Demand, and Ms. Gereighty did not raise any objections or arguments with the trial court regarding Mr. Domingue's retraction of prior factual allegations. Therefore, the only allegations the trial court should have considered and that this Court will consider are those set forth in the Second Amended Reconventional Demand.
In the Second Amended Reconventional Demand, Mr. Domingue alleged that prior to their marriage, he and Ms. Gereighty decided to purchase her brother's half interest in the Clifford Property "in contemplation of their marriage." He claimed Ms. Gereighty asked him for funds to assist with the purchase, financing and down payment, and he agreed to provide the funds with the understanding he would *1034 own a portion of the house. He next alleged that on "July 10, 2002, in contemplation of the marriage and in accordance with their agreement and decision to purchase David Gereighty's interest," he requested the withdrawal of an estimated $40,000 from his retirement plan. Mr. Domingue did not allege in the Second Amended Reconventional Demand that he provided the funds "out of the belief they would have a lasting marriage."
Furthermore, he alleged the estimated $40,000 in funds he withdrew from his retirement account was not a gift, "but a down payment for house [sic] he was to purchase and have an ownership interest in as an owner." Mr. Domingue also claimed the following provision of the Prenuptial Contract evidenced their intent for him to obtain an ownership interest in the Clifford Property:[8]
If the parties purchase the property which is the current residence of Peggy T. Gereighty, the property will be divided as follows: ownership by Tavis C. Domingue 16.5% and ownership by Peggy T. Gereighty 83.5% with 12.5 % reserved for Tavis C. Domingue and 24.5% reserved for Peggy T. Gereighty to be taken off the top of the sale price of the home and the remainder split as the ownership describes herein.
Mr. Domingue claimed he did not obtain an ownership interest in the Clifford Property because when Ms. Gereighty purchased her brother's interest, she falsely represented that Mr. Domingue could not purchase the home due to credit issues.
Based on the foregoing, we agree the Prenuptial Contract does not govern Mr. Domingue's claim to recover the estimated $40,000 because he provided the funds prior to signing the agreement and prior to their marriage. We further agree the trial court erred in finding the estimated $40,000 in funds withdrawn from his retirement account and provided to Ms. Gereighty was a donation. In the Second Amended Reconventional Demand, Mr. Domingue alleged these funds were not a gift. He further alleged he entered into an agreement with Ms. Gereighty to provide the funds in return for an ownership interest in the Clifford Property.
At the same time, however, we agree with the trial court's finding that a claim of unjust enrichment is not warranted because Mr. Domingue had another remedy at law based on the allegations set forth in the Second Amended Reconventional Demand. Instead of a cause of action for revocation of donation, we find Mr. Domingue's allegations sufficiently state a cause of action for breach of contract against Ms. Gereighty.
A contract is an agreement by two or more parties whereby obligations are created, modified or extinguished. La. C.C. art. 1906. The essential elements of a breach of contract are threefold. Sanga v. Perdomo , 14-609 (La. App. 5 Cir. 12/30/14), 167 So.3d 818, 822, writ denied , 15-222 (La. 6/19/15), 172 So.3d 650. First, a plaintiff in a breach of contract claim must prove that the obligor undertook an obligation to perform. Id. Next, he must prove that the obligor failed to perform the obligation, resulting in a breach. Id. Finally, the failure to perform must result in damages to the obligee. Id.
Mr. Domingue alleged the parties agreed he would provide funds for the purchase, down payment and financing of the Clifford Property in exchange for an ownership interest. Mr. Domingue withdrew *1035 approximately $40,000 from his retirement plan and after deducting taxes, he deposited $31,561.17 into the parties' joint bank account. He claimed Ms. Gereighty used those funds to pay her separate obligations, rather than for the purchase of the Clifford Property. He further alleged Ms. Gereighty lied to him and told him he could not be named as a purchaser on the act of sale due to his credit issues. He contends he could have purchased the Clifford Property and due to Ms. Gereighty's misrepresentations he did not obtain an ownership interest in the Clifford Property. He further alleged damages because he lost the retirement benefits he would have received if the funds remained in his retirement plan.
Based on the foregoing, we find the trial court erred in granting Ms. Gereighty's exception of no cause of action with respect to appellant's claim to recover the estimated $40,000 in funds withdrawn from Mr. Domingue's retirement account and we remand this claim to the trial court for further proceedings.
Fourth Assignment of Error-Failure to Allow Opportunity to Present Evidence to Hearing Officer
In his fourth assignment of error, appellant argues the trial court's ruling was "procedurally incorrect" because he did not have the opportunity to present evidence and testimony before the hearing officer. Twenty-Fourth Judicial District Court Appendix Rule 32.I.B(3)(k) allocates the responsibility to hear exceptions in domestic proceedings to domestic commissioners, not domestic hearing officers. The record indicates the domestic commissioner heard and granted Ms. Gereighty's exception on no cause of action with respect to appellant's First and Second Amended Reconventional Demands. Appellant filed a timely objection, which the trial court then heard. Based on the foregoing, we do not find any procedural error exists due to the lack of opportunity to appear before the hearing officer with respect to the exception of no cause of action.
Appellant also complains he did not have the opportunity to present evidence and testimony before the hearing officer. However, as appellant himself notes, the purpose of an exception of no cause of action is to test the sufficiency of the pleadings. Normally, evidence cannot be introduced to support or controvert an exception of no cause of action. La. C.C.P. art. 931. This assignment of error is without merit.
Fifth Assignment of Error-Denial of Exception of Res Judicata
In his fifth assignment of error, appellant argues the trial court erred by failing to grant Mr. Domingue's exception of res judicata, which sought dismissal of Ms. Gereighty's exception of no cause of action.
Appellant contends that during a pre-trial conference held in the trial judge's chambers on July 10, 2015,[9] the trial court "addressed and upheld Tavis Domingue's cause of action for his separate property reimbursement claims based on unjust enrichment." Appellant contends that somehow this alleged discussion in chambers serves as a basis to precluded Ms. Gereighty from filing an exception of no cause of action in response to his First and Second Amended Reconventional Demands.
*1036 The transcript from the July 10, 2015 hearing does not contain any discussion or ruling from the trial court regarding the substance of Mr. Domingue's reimbursement claims. The transcript merely contains a statement from Ms. Gereighty's counsel that she understood from their pretrial conference that the trial court would allow Mr. Domingue 30 days to amend his reconventional demand. The trial court signed a judgment on September 28, 2015 allowing Mr. Domingue "30 days to amend his Reconventional Demand." The judgment does not contain any language setting forth an agreement between the parties to allow Mr. Domingue to proceed with his reimbursement claims by alleging a cause of action for unjust enrichment. Furthermore, it did not contain any language which precluded Ms. Gereighty from filing exceptions in response to Mr. Domingue's amended allegations. Therefore, we find the trial court did not err by denying appellant's exception of res judicata.
Sixth Assignment of Error-Denial of Ms. Gereighty's Exception of Res Judicata
In the final assignment of error, appellant argues the trial court erred by addressing the domestic commissioner's ruling on Ms. Gereighty's exception of res judicata because Ms. Gereighty did not file a timely objection. Pursuant to the January 19, 2017 Judgment signed by the domestic commissioner, he ruled Ms. Gereighty's exception of res judicata was moot, presumably because he granted Ms. Gereighty's exception of no cause of action. Following the hearing on appellant's objection to the domestic commissioner's rulings, the trial court entered the February 14, 2017 Judgment, which overruled appellant's objection, but also decreed that the exceptions of res judicata filed by both parties were denied.
This assignment of error serves no purpose to revive any claims alleged by appellant. However, appellant is correct that the trial court should not have reviewed the domestic commissioner's decision rendering Ms. Gereighty's exception of res judicata moot. Ms. Gereighty did not file an objection to the domestic court's judgment and appellant did not raise an issue with respect to this ruling in his objection. Accordingly, we vacate the portion of the trial court's February 14, 2017 Judgment, which denied the exception of res judicata filed by Ms. Gereighty, and reinstate the domestic commissioner's January 17, 2017 Judgment, which declared Ms. Gereighty's exception of res judicata moot.
Additional Arguments Not Set Forth in Assignments of Error
Nullification of "Certain Provisions" of Prenuptial Contract
Though not set forth in any assignment of error, at the end of his brief, appellant argues certain unidentified provisions of Prenuptial Contract may be null and void because Ms. Gereighty is an attorney who drafted the contract, and made material misrepresentations to Mr. Domingue. Appellant argues Ms. Gereighty's "conduct may have vitiated Mr. Domingue's consent to certain provisions since Peggy Gereighty gave legal advice to Tavis Domingue before they were married and he was without counsel when Peggy presented him with the contract last [sic] minute within, right before the wedding."
First, Mr. Domingue did not allege in his Second Amended Reconventional Demand that Ms. Gereighty provided him with legal advice, that he was without counsel or that she made material misrepresentations to him regarding any specific provisions of the Prenuptial Contract. Furthermore, appellant fails to specify the alleged material misrepresentations and fails *1037 to cite to the provisions he seeks to declare null due to the alleged misrepresentations in his appellate brief. Also, appellant did not raise any claims in his reconventional demands seeking to nullify specific provisions of the prenuptial contract based on material misrepresentations. Therefore, we find these arguments are unsupported and without merit.
Requests for Attorney's Fees and Costs
Finally, we first deny appellant's request for attorney's fees and costs for filing this appeal.
Ms. Gereighty also argues in her appellate brief that the Prenuptial Contract provides the prevailing party may recover attorney's fees and requests that this Court remand this issue to the trial court to conduct a hearing to determine the appropriate amount of fees to award in her favor. The trial court did not award attorney's fees to Ms. Gereighty in its February 14, 2017 judgment. Ms. Gereighty did not file a cross-appeal or answer the appeal.
Appeal is the exercise of the right of a party to have a judgment of a trial court revised, modified, set aside, or reversed by an appellate court. La. C.C.P. art. 2082. Where another party has already appealed, a non-appealing party who desires a change in the judgment can file an answer to the appeal:
A. An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer. Additionally, however, an appellee may by answer to the appeal, demand modification, revision, or reversal of the judgment insofar as it did not allow or consider relief prayed for by an incidental action filed in the trial court.
La. C.C.P. art. 2133(A) ; Vicknair v. St. James Parish Sch. Bd. , 06-381 (La. App. 5 Cir. 10/31/06), 945 So.2d 116, 119.
Because Ms. Gereighty did not file an appeal or answer the appeal, we are precluded from considering her request to remand this matter to the trial court to award attorney's fees.
DECREE
Accordingly, we affirm the portion of the trial court's February 14, 2017 judgment, which denied appellant's exception of res judicata. We further affirm the portion of the trial court's judgment which granted the exception of no cause of action and dismissed reimbursement claims for expenses Mr. Domingue allegedly paid during the marriage.
We reverse the portion of the trial court's judgment, which granted Ms. Gereighty's exception of no cause of action and dismissed the claim to recover an estimated $40,000 withdrawn from Mr. Domingue's retirement plan. This claim is remanded to the trial court for further proceedings. We also vacate the trial court's judgment with respect to Ms. Gereighty's exception of res judicata and reinstate the domestic commissioner's January 19, 2017 judgment, which declared this exception as moot.
Finally, we find Ms. Gereighty's exceptions of lack of procedural capacity and no right of action first filed with this Court, as well as her motion to dismiss the appeal, *1038 are moot due to the substitution of the court-appointed independent administrator in these appellate proceedings for the decedent, Tavis Domingue.
AFFIRMED IN PART; REVERSED AND VACATED IN PART; REMANDED FOR FURTHER PROCEEDINGS; EXCEPTIONS OF LACK OF PROCEDURAL CAPACITY AND NO RIGHT OF ACTION DENIED; MOTION TO DISMISS APPEAL DENIED

The parties resided in the Clifford Property both before and after they were married.

Ms. Gereighty contends these allegations expressed a donative intent.

In her appeal brief, Ms. Gereighty argues for the first time that the trial court correctly granted the exception of no cause of action because Mr. Domingue could not retract his prior allegations that he provided the funds to Ms. Gereighty in contemplation of their marriage. Because this issue was not raised with the trial court, this Court will not consider this argument in the context of whether the trial court erred in granting the exception of no cause of action. See Uniform Rule-Courts of Appeal, Rule 1-3. Ms. Gereighty may raise this issue with the trial court on remand.

Though the trial judge indicated he reviewed the allegations in both the First and Second Amended Reconventional Demands, it appears Mr. Domingue abandoned the First Amended Reconventional Demand, because the Second Amended Reconventional Demand replaces all allegations in the prior demand and did not reallege or incorporate any allegations contained in those prior pleadings. See Santiago v. Tulane Univ. Hosp. & Clinic , 12-1095 (La. App. 4 Cir. 4/24/13), 115 So.3d 675, 685-86. Again, we do not address Ms. Gereighty's argument raised for the first time on appeal before this Court that the allegations set forth in the prior reconventional demands were admissions.

Appellant does not raise any assignments of error on appeal challenging the dismissal of the claims alleged pursuant to La. R.S. 9:2801, and La. C.C. arts. 2354 and 2368, which apply to property subject to a community property regime.

Mr. Domingue sought reimbursement of other expenses he allegedly paid during the marriage in the Second Amended Reconventional Demand. However, he only refers to the mortgage payments and health insurance premiums in his arguments on appeal.

The Second Amended Reconventional Demand contains no factual allegations to support a claim that Mr. Domingue intended to loan these funds to Ms. Gereighty. Furthermore, appellant fails to provide any argument whatsoever in the appellate brief to explain how the allegations in the Second Amended Reconventional Demand could support such a claim. Therefore, we will not consider this argument in our analysis of whether the trial court properly granted the exception of no cause of action.

The Second Amended Reconventional Demand also contains allegations that Mr. Domingue recalled this provision containing dollar amounts as opposed to a "formula" in the agreement originally provided by Ms. Gereighty for his review.

As explained above, the July 10, 2015 hearing was set for the trial court to consider Mr. Domingue's objection to the domestic commissioner's judgment which granted Ms. Gereighty's first exception of no cause of action and dismissed Mr. Domingue's claims set forth in his original reconventional demand.